UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ONE BEACON INSURANCE COMPANY                CIVIL ACTION

VERSUS                                       No. 08-3623

ELECTRICAL POWER ENGINEERING
(SCOTLAND), LTD.                             SECTION "C" (1)


ORDER AND REASONS

Before the Court is a Motion for Summary Judgment by Defendant Electrical Power Engineering (Scotland), Limited ("EPE").[1] (Rec. Doc. 69). Plaintiff One Beacon Insurance Company ("One Beacon") opposes. The motion is before the court on the briefs, without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the motion is DENIED for the following reasons.

**I. Background**

This matter arises out of a mechanical failure onboard the M/V SUPERIOR ENDEAVOUR on June 24, 2007, wherein, during a scheduled test, the speed of the port main engine increased beyond safe operational limits and caused counterweights to shear off, resulting in significant damage. (Rec. Doc. 81-2 at 2).

One Beacon's insured, Superior Offshore International, Inc., contracted with EPE for electrical work on the engines. (Rec. Doc. 81-2 at 1). One Beacon claims that the engine failure

---

[1] EPE is now known as BR & HJ 2 Limited. For the purpose of this Order and Reasons the Court will refer to it as EPE.

was the result of EPE's failure to properly install a Woodward brand governor speed control system and overspeed shutdown device. (Rec. Doc. 81 at 2-9).

EPE argues that it is entitled to summary judgment for two primary reasons. First, EPE contends that it is undisputed that the governor speed control system was operating properly at the time of the incident, and that the overspeed shutdown device was beyond the scope of their contract with Superior. (Rec. Doc. 69 at 9, 14). Second, EPE asserts that Superior's spoliation of evidence following the incident entitles it to sanctions, specifically dismissal of One Beacon's claims. (Rec. Doc. 69 at 22).

**II. Law and Analysis**

*A. Standard of Review*

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the

burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

   *B. The Governor Speed Control and Overspeed Shutdown Device*

  EPE first argues that it is undisputed that the governor speed control was properly functioning on the day of the incident. (Rec. Doc. 69-2 at 9). They cite to the depositions and communications of several EPE employees to support this contention. Gert de Wit, a commissioning engineer employed by Control Commissioning Services, an EPE subcontractor, testified that prior to the incident, the governor speed control had never malfunctioned. (Rec. Doc. 69-2 at 10). Following the incident, Alan Bowen, EPE US Operations manager, immediately requested inspection of the governor speed control and was informed that governor speed control was properly wired. (Rec. Doc. 69-2 at 11). Further, according to EPE the engine rebuilding was performed "without any modification to the design or installation of the governor speed control system," (Rec. Doc. 69-2 at 12) and "continues to operate on the SUPERIOR ENDEAVOUR, with the same design and connections" today. (Rec. Doc. 69-2 at 13).

  One Beacon counters that the governor speed control was improperly wired, and that although an overspeed device would have prevented an engine overspeed incident, it was not the cause of the incident. (Rec. Doc. 81 at 6-7). Gert de Wit testified that when he heard the engine

3

speed increasing beyond safe limits, he ran to the governor speed control and manually pulled the wires to disconnect it. (Rec. Doc. 81-8 at 3-5). He expected that this would prevent fuel from reaching the engine and cause it to stop. *Id.* That it did not suggests a fault in governor speed control, if these allegations are proven.

One Beacon also points to several expert reports that conclude that the cause of the incident was "a power interruption to the engine's electronic speed governor control system and a secondary failure of the engine's automatic overspeed protection device." (Rec. Doc. 81 at 4-5). According to the installation manual for the governor speed control ("the Woodward manual"), "[e]ngine overspeed is possible if power is removed from the driver while the engine is running." (Rec. Doc. 81-11). The reports allege that the governor speed control was not wired to a battery power source, contrary to the direction of the Woodward manual. (Rec. Doc. 81 at 10-12). Danny Blanchard, a surveyor who investigated the incident on June 25, 2007, submitted a declaration stating that he observed that the wiring was not connected to the battery supply,[2] (Rec. Doc. 81-14) and Joseph Andrews, a service engineer, reported similar wiring discrepancies in his report. (Rec. Doc. 81-6 at 4).

From the above discussion, the Court finds that there is a factual dispute as to whether the incident was caused by a problem with the wiring of the governor speed control. Although EPE dubs this a "magical theory," the testimony of several experts is sufficient to establish a factual dispute over the cause of the overspeed. (Rec. Doc. 87 at 3).

---

[2] In its reply brief, (Rec. Doc. 87 at 3) EPE draws the Court's attention to Blanchard's June 25, 2007, "Preliminary Advice," which makes no mention of faulty wiring. (Rec. Doc. 87-2 at 15-16). That report notes that "Exact cause of the engine failure remains under investigation." *Id.* at 16. It is not clear to the Court whether the Preliminary Advice is a document in which observations about the wiring on the vessel would usually be reported.

EPE also argues that the Woodward manual's warning "<u>does not</u> place a duty on the installer of the Woodward equipment to ensure the status, condition, or functionality of an overspeed shutdown device." (Rec. Doc. 87 at 2). Regardless, proper wiring of the Woodward governor speed control device itself was clearly within the scope of EPE's contractual duties, and EPE does not dispute this.

Because the Court finds that there is a genuine issue of material fact as to the cause of the overspeed incident, it does need to reach the question of whether proper maintenance of the overspeed device was within the scope of EPE's duties.

*C. Spoliation*

The spoliation of evidence doctrine concerns the intentional destruction of evidence. *See Menges v. Cliffs Drilling Co.*, 2000 WL 765082 at *1 (E.D. La.) (Vance, J.) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir.1994). If a court determines that spoliation has occurred it may, in its discretion, impose sanctions on the spoliating party. Courts have developed two distinct tests for determining the appropriate sanctions in such a situation. *See Tracy v. Cottrell ex rel. Cottrell*, 524 S.E.2d 879, 889-90 (W. Va. 1999) (discussing different tests). Under the *Schmid* test, developed by the Third Circuit, the trial court must perform the following analysis: (1) determine the degree of fault of the party who altered or destroyed the evidence; (2) determine the degree of prejudice suffered by the opposing party; and (3) determine the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct. *Schmid*, 13 F.3d at 79. Other courts have adopted a five part test in which the courts must determine: (1) prejudice to the defendant, (2) whether the prejudice can be cured, (3) the practical importance

of the evidence, (4) whether the plaintiff was acting in good faith or in bad faith, and (5) the potential for abuse in not sanctioning the plaintiff. *See Cottrell*, 524 S.E.2d at 889-90 (citing several federal district courts and state supreme courts that have adopted this test).

Regardless of the test used, spoliation sanctions are a drastic measure only suitable in extreme circumstances. *See Menges*, 2000 WL 765082 at *2. Federal courts in diversity suits such as this one apply federal evidentiary rules rather than state spoliation laws in diversity suits. *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). In the Fifth Circuit, before an adverse inference or comparable sanction is applied, the Court must find that the party in control of the evidence acted in "bad faith." *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003).

EPE argues that it is entitled to sanctions because Superior rebuilt the damaged engine without conducting a joint damage survey and because Superior failed to inform EPE that they intended to bring claims against them until seven months after the incident. (Rec. Doc. 69-2 at 22). They characterize Superior's failure to preserve the removed engine parts as "wanton and reckless." *Id.* They argue that One Beacon, as a sophisticated insurer, was patently aware of the potential for litigation,[3] yet failed to preserve the evidence or notify EPE of their claims. (Rec. Doc. 87 at 5-6). Although EPE employees were on the ENDEAVOUR following the incident, they were not conducting investigations; they were instructed to rebuild the damaged engine, and did so. (Rec. Doc. 87 at 6-7). They were not put on notice that their actions could destroy evidence that could implicate their liability. *Id.*

---

[3] In an email from One Beacon corporate representative Catherine Arman on June 29, 2007, she requested that "no work or tear down take place on the engine prior to an agreed joint survey." (Rec. Doc 69-8 at 20).

One Beacon concedes that it did not notify EPE of its claims until seven months after the incident, (Rec. Doc. 69-7 at 24), but contends that the appropriate test for sanctions is not met in this instance. (Rec. Doc. 81at 19). Specifically, they argue that at the time the engine was rebuilt, they were not on notice that litigation was forthcoming, and that EPE has failed to provide evidence of bad faith or relevance. (Rec. Doc. 81 at 15-16). They also argue that EPE had full access to the engine at all times following the incident, and therefore was not prejudiced by not being on notice. *Id.* at 17.

EPE has presented no evidence of bad faith in this matter. The fact that One Beacon failed to notify EPE of its claims until seven months after the incident corroborates their lack of intention to spoliate: it appears that they did not foresee bringing their claim against EPE until well after the engine was rebuilt.[4] *See King*, 337 F.3d at 556.

The Court is nonetheless troubled by the lack of any notice to EPE that their workmanship might be blamed for the accident and is sympathetic to EPE's claims of prejudice and their inability to investigate the damaged engine. In the absence of bad faith evidence however, a drastic dismissal sanction cannot be supported. Nevertheless, as fact finder in this bench trial, the Court will take into consideration EPE's disadvantaged position, due to the lack of notice.

---

[4] In a July 2008 email Superior employee Gerard Ledet wrote EPE US Operations Manager Alan Bowen that "concerning the Port Main engine failure on the Superior Endeavour . . . the fault should not be placed on EPE. After investigations by all, it was found that the over speed unit on the engine was not powered or able to work because it was disabled. . . . It is the duty of the onboard engineer to check all systems on the engine before starting it, not the contractor who is working on a system." (Rec. Doc. 69-8 at 1). One Beacon does not address this email–sent well after EPE had been notified of One Beacon's claims–and it is not clear in what capacity Ledet was writing. Although this correspondence certainly does not help One Beacon's claims, neither does it prove bad faith on the part of Superior in rebuilding the engine.

Accordingly,

IT IS ORDERED that EPE's motion for summary judgment (Rec. Doc. 69) is DENIED.

New Orleans, Louisiana, this 24th day of November, 2009.

                                            HELEN G. BERRIGAN
                                            UNITED STATES DISTRICT JUDGE